IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN LEE JORDAN,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CV. 2:11- 06104 RE

OPINION AND ORDER

**REDDEN**, Judge:

Plaintiff Steven Jordan ("Jordan"), brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for further proceedings.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1958, Jordan has a high school education. In October 2007, Jordan applied for disability benefits alleging disability since December 31, 2006, due to back pain, left shoulder pain, bilateral carpal tunnel syndrome, depression, a learning disorder, and Attention Deficit/Hyperactivity Disorder. His application was denied initially and upon reconsideration. On September 14, 2009, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated November 13, 2009, the ALJ found Jordan not disabled. Jordan's request for review was denied, making the ALJ's decision the final decision of the Commissioner. Jordan now seeks judicial review of the Commissioner's decision.

## ALJ's DECISION

The ALJ found Jordan had the medically determinable severe impairments of back pain, left hip pain, left shoulder pain, bilateral carpal tunnel syndrome, depression and anxiety.

The ALJ determined that Jordan retained the residual functional capacity to perform a limited range of light work, and that he had moderate difficulties with regard to concentration, persistence and pace. He is limited to simple, repetitive tasks.

The ALJ determined that Jordan was unable to return to his past relevant work. The AJL found that Jordan retained the ability to work as a bakery line worker, a cleaner, or a folding machine operator. Tr. 17.

The medical records accurately set out Jordan's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

2 - OPINION AND ORDER

## DISCUSSION

Jordan contends that the ALJ erred by: (1) finding him not fully credible; (2) improperly weighing physician testimony; (3) improperly rejecting lay testimony; and (4) failing to show that he retains the ability to perform other work.

### I. Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)(citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947. F.2d 341, 345-46 (9th Cir. 1991)(*en banc)).*

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony

3 - OPINION AND ORDER

"is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

The ALJ noted that Jordan alleges disability based primarily on back, left hip, shoulder, and hand pain. The ALJ concluded that Jordan was not fully credible as to the intensity, persistence and limiting effects of his symptoms:

> Specifically, the claimant reported that he lost his job of 25 years (which was performed at the very heavy exertional level according to the claimant [citation omitted]) because his job was outsourced overseas, and not due to his physical and/or mental impairments [citation omitted]. Claimant testified that he has been on unemployment compensation and has been looking for work such as a security guard and gas station attendant, which strongly suggests he feels he is able to return to light work. Additionally, it is significant that the claimant tended to be vague regarding his medical history, citing pain and symptoms in general and using terms such as "years," during the consultative examination [citation omitted].

Tr. 15. Plaintiff testified that he worked in pain until his job was outsourced, and that he was having difficulty performing the job, and depended on friends to keep him on easier jobs. Tr. 47. Plaintiff testified that the company modified his job to allow him to sit. Tr. 52-53.

The ALJ cited a March 2008 physical examination by Kurt Brewster, M.D., in which Dr. Brewster found a "minimal reduction in cervical and lumbar range of motion." Tr. 289. Dr. Brewster noted that "given lack of objective evidence within medical exam or within record, do not have a basis to limit claimant to degree estimated." *Id.* Jordan argues that the ALJ erred in relying on Dr. Brewster's opinion because Brewster did not have access to Jordan's medical record, except for the physical capacity assessment by Park, a physical therapist and not an acceptable source. Jordan contends that Dr. Brewster did not know that he had been diagnosed with a verbal learning disability and attention deficit hyperactivity disorder. Jordan points to the

4 - OPINION AND ORDER

psychologists who described him as tangential. However, the claimant does not establish that either the diagnosed mental limitations or the ADHD would cause him to be "unfamiliar with details of his own activities" and uncertain as to whether he could tie his own shoes, as noted by Dr. Brewster. Tr. 289.

The ALJ noted that March 2008 x-rays were essentially normal, with marginal osteophytosis. Tr. 15, 293. The ALJ cited the June 2007 evaluation conducted by Christopher Park, O.T.R., F.A.B.D.A, in which the claimant denied back pain and was taking no pain medication. Tr. 15, 225. A September 2008 chart note indicates that Jordan injured his back in a fall, but examination showed tenderness and decreased range of motion with no neurological deficits, and the diagnosis was thoracic and lumbar strain for which medication and physical therapy were prescribed. Tr. 15, 370.

The ALJ identified clear and convincing reasons to support his determination that the claimant's subjective complaints are less than fully credible.

## II. Physician Testimony

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830.

The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A. Brian Jones, M.D.**

Dr. Jones began treating Jordan in February 2008. Dr. Jones noted that back pain and radicular pain were improved. Tr. 337. Jordan complained of left chest and pectoralis pain arising out of an on the job injury that occurred two years prior. The left shoulder had a "near full range of motion," but there was "some atrophy" of the distal aspect of the left pectoralis muscle. *Id.* Dr. Jones noted "some weakness" with the ability to contract that muscle, and prescribed physical therapy. Tr. 19.

In April 2008, Jordan sought treatment for a left shoulder injury that had occurred in 2003. Jordan did not want surgery. Dr. Jones found a "slightly decreased range of motion" with abduction, tenderness of the left pectoralis muscle, and prescribed physical therapy. Tr. 335. Dr. Jones noted that Jordan "could return to work at this time but he would be limited in terms of how much he can lift. I would not suggest he lift more than 20 pounds, but I would not put him on any other restrictions at this time." *Id.*

In May 2008, Dr. Jones noted that Jordan "wanted to document that his hands have been numb for many years." Tr. 334. Dr. Jones found that Jordan had good grasp strength and a full range of motion in his hands, and referred Jordan for nerve conduction studies. Those studies revealed mild to moderately severe carpal tunnel syndrome on the left and mild on the right. Jordan declined referral to a surgeon. Tr. 331.

On July 30, 2008, Jordan reported that he had developed left hip pain over the past few days. Tr. 373. Dr. Jones diagnosed a strain injury, and prescribed ice and ibuprofen.

On September 19, 2008, Jordan reported to Dr. Jones that he had hurt his back when he stepped off a one foot deck. Tr. 370. Dr. Jones diagnosed a thoracic and lumbar strain, and prescribed Flexeril and stretching exercises.

In October, 2008, Jordan reported left low back pain, with pain radiating into the left buttock and down the left leg, for the past five days. Tr. 369. Dr. Jones prescribed Vicodin and Naprosyn, and advised him to return if he was not doing better. Two weeks later, Jordan reported continuing pain radiating down the left leg. Tr. 368. Dr. Jones prescribed physical therapy and Naprosyn.

On July 7, 2009, Dr. Jones reported:

> He describes pain of his bilateral forearms. He did see Dr. Fedorov who recommended doing carpal tunnel surgery, but patient does not want to do that. He has been having some on-going left hip pain.... The patient states that he is basically beat up from all the labor he has done over the years and believes that he should be considered now medically disabled. I told him at this point, he certainly could do a light duty job but really would not be able to do much in the way of lifting, or could not be on his feet for long periods of time.

Tr. 352. Hip x-rays revealed minimal degeneration. Tr. 348.

Dr. Jones saw Jordan for left heel pain on July 30, 2009. Tr. 347. He opined that Jordan was unable to do the kind of repetitive work he had done in the past, and that "his only possibility for employment will be at very light duty work with no frequent lifting, no frequent bending" and no lifting more than ten pounds. *Id.*

The ALJ noted Dr. Jones's opinion that Jordan was limited to light duty with decreased lifting and no prolonged standing/walking, but said that "examination notes do not show any motor, sensory or reflex loss, or other findings that would support such an opinion." Tr. 16.

7 - OPINION AND ORDER

Plaintiff points to Dr. Jones's Februrary 2008 observation of atrophy of the pectorilis muscle and decreased range of motion in the shoulder. Tr. 335, 337.

Dr. Jones's opinion is contradicted by the opinion of Dr. Brewster, who conducted a comprehensive orthopedic examination in March 2008 and concluded that Jordan had full motor strength in all upper and lower muscles. Sensory examination of upper and lower extremities was completely normal. Tr. 288-89. Jordan reported to Dr. Brewster that he walked his dog for an hour and a half at a time. Tr. 284. Dr. Jones noted that Jordan had good grasp strength and a full range of motion in his hands. Tr. 334. Dr. Jones's opinion is inconsistent with that of consulting physician Martin Kehrli, M.D. The ALJ cited the May 2008 report of Dr. Kehrli, who reviewed the record and found that claimant had the residual capacity for light work, with only occasional climbing of ladders, ropes, or scaffolds, and only occasional stooping and crouching. Tr. 15, 309.

The ALJ provided legally sufficient reasons to reject Dr. Jones's opinion as to lifting restrictions and limitations on standing/walking.

### B. Steve Pethick, Ph.D.

Dr. Pethick evaluated Jordan in April 2007. He diagnosed a learning disability related to auditory processing, and an inability to efficiently and reliably retain verbally presented information in his memory. Dr. Pethick found Jordan met the criteria for attention deficit hyperactivity disorder and depressive disorder, and assessed a Global Assessment of Function of 55. Tr. 217-23.

### C. Ryan Scott, Ph.D.

Dr. Scott examined Jordan in March 2008, and reviewed Dr. Pethick's report. Tr. 294-97. Dr. Scott agreed with Dr. Pethick's conclusions. Tr. 297.

**D. Dorothy Jean Anderson, Ph.D.**

Dr. Anderson reviewed the record, including the reports from Drs. Pethick and Scott. Tr. 310-26. She provided a mental functional capacity assessment, which the ALJ accepted. Tr. 13-14.

Plaintiff contends that the ALJ erred by failing to limit him to tasks that do not require reliance on short-term auditory memory. Dr. Anderson found that Jordan was moderately limited in the ability to understand and remember detailed instructions. She also opined that Jordan was not significantly limited in understanding and remembering simple instructions. Tr. 324. 326. This conclusion was corroborated by other evidence, including that of the Goodwill Industries assessor who noted that Jordan learned seven new simple, repetitive tasks. Tr. 262. The ALJ properly accounted for Jordan's mental limitations by limiting him to simple, repetitive tasks.

### III. Other Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue,* 557 F.3d 1113, 1115 (9th Cir. 2008). The ALJ may not reject such testimony without comment and must give reasons germane to the witness.

Linda Diaz completed an Adult Function Report in November 2007. Tr. 153-160. She reported that Jordan was severely limited by constant pain, that he could walk one block before resting, and that he could concentrate fifteen minutes at a time. The ALJ erred by failing to address the lay testimony. *Stout v. Commissioner,* 454 F.3rd 1050, 1056 (9th Cir. 2005).

## CONCLUSION

For these reasons, the ALJ's decision that Jordan is not disabled is not supported by substantial evidence. The decision of the Commissioner is reversed and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

Dated this 19th day of March, 2012.

_____
JAMES A. REDDEN
United States District Judge